**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
:
JACK GOODMAN,                       :
                                    :
            Plaintiff,              :   Civil Action No. 05-4292 (RMB)
                                    :
        v.                          :   **OPINION**
                                    :
CORRECTIONAL MEDICAL SVS.,          :
et al                               :
                                    :
            Defendants.             :
_____ :

**BUMB**, United States District Judge:

        This matter comes before the Court upon motions for summary judgment by Defendants Correctional Medical Services, Inc., Devon Brown and Kathryn MacFarland.  At the time of the filing of the Complaint and within motions, Plaintiff Jack Goodman was an inmate incarcerated at South Woods State Prison in Bridgeton, New Jersey.[1]  Plaintiff alleged that Defendants, then New Jersey Department of Corrections Commissioner Devon Brown, Prison Administrator Kathryn MacFarland, and Correctional Medical Services, Inc. ("CMS"), a private corporation retained by the State to provide inmate medical services, maintained a custom or

---

[1] On May 2, 2006, the plaintiff was released from custody.

policy of deliberate indifference to Plaintiff's medical needs in violation of the Eighth Amendment to the U.S. Constitution. Plaintiff has filed the Complaint pursuant to 42 U.S.C. § 1983.

For the reasons set forth below, Defendants' motions for summary judgment will be denied.

I.      Background

This Court will review the facts in a light most favorable to the Plaintiff, as the non-moving party.  Likewise, the Court will grant Plaintiff all reasonable inferences. Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005).  The following facts were derived from plaintiff's Brief in Opposition and supporting Affidavits.[2]

At all times relevant to these motions Plaintiff was an inmate at South Woods State Prison.  South Woods Prison officials were to assign Plaintiff to a lower bunk due to a permanent back injury.  Nonetheless, in March 2005, Plaintiff was assigned to an upper bunk.  On April 18 2005, Plaintiff injured his finger when he fell from the top bunk.  A CMS nurse applied a splint and ice, instructed Plaintiff to keep his hand elevated, and provided pain

---

[2] Although Plaintiff was directed by the Court to submit an affidavit to support his claims, Plaintiff submitted a short Affidavit with a Legal Memorandum.  As the Legal Memorandum and its exhibits contains many factual claims, the Court will treat the accompanying Affidavit as incorporating those factual statements.  See Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (construing pro se complaints liberally).

medication.  Two days later prison and CMS staff took Plaintiff for x-rays which revealed Plaintiff had fractured his finger.  Plaintiff was advised to see a orthopedic specialist within the next few days.  CMS staff scheduled Plaintiff with an orthopedic specialist for May 25, 2005.  In the days after the x-rays Plaintiff complained of pain in his hand and asked to see the specialist sooner.

On May 25 Plaintiff was examined by the orthopedic specialist.  Plaintiff was advised to keep the fracture in the splint and begin physical therapy in several weeks, once the fracture healed.  The specialist examined Plaintiff again around June 14, 2005.  In early August 2005, Plaintiff returned to the specialist who now suggested surgery to correct a shortening of Plaintiff's injured finger.  Plaintiff did not undergo surgery.  Plaintiff was again examined in September and November 2005.  By January 2006, Plaintiff's finger had healed, though somewhat shorter than previously.

Plaintiff filed this action on September 1, 2005, alleging Defendants violated his civil rights through their failure to attend to his injured finger.  Plaintiff's complaint alleges two claims each against Defendants Brown and MacFarland: 1) Defendants maintained an unconstitutional policy or custom that permitted Plaintiff to be assigned to an upper bunk despite his medical condition; and 2) Defendants maintained an

unconstitutional policy or custom that was deliberately indifferent to Plaintiff's need of medical treatment for his injured hand. (Compl. ¶¶ 4C-4D, 6B-6C) Plaintiff's complaint also alleges a single claim against Defendant CMS, namely, that CMS maintained an unconstitutional policy or custom that was deliberately indifferent to Plaintiff's need of medical treatment when it delayed treatment for Plaintiff's injured hand. (Compl. ¶¶ 4B, 6A)

After limited discovery all Defendants have moved for summary judgment on numerous grounds.

II.     Defendants' Motion

Defendants Brown and MacFarland move for summary judgment, first, on the grounds that Plaintiff has failed to exhaust his administrative remedies. Second, Defendants contend that Plaintiff's claims against them in their official capacities are barred. Third, on the grounds that Plaintiff has not shown any direct wrongdoing by Defendants. Finally, Defendants assert that because they are not physicians they cannot be considered deliberately indifferent.

CMS moves for summary judgment on the grounds that Plaintiff has offered no evidence of an unconstitutional policy or custom by CMS and that Plaintiff failed to exhaust his administrative remedies. CMS also asks that any state law

negligence claims be dismissed on procedural grounds.

III.     Standard

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. V. Catrett, 477 U.S. 317, 330 (1986).

The burden of establishing the nonexistence of a "genuine issue" is on the moving party.  Celotex, 471 U.S. at 530.  The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case.  Id. at 331.  If the moving party has not fully discharged its initial burden, motion for summary judgment must be denied.  Id. at 332.  If the moving party satisfies its initial burden, the nonmoving party "must set forth specific facts showing that there is an genuine issue for trial."  Fed. R. Civ. P. 56(e).

"Throughout we bear in mind that, 'however inartfully pleaded,' the 'allegations of [a] pro se complaint [are held] to less stringent standards than formal pleadings drafted by lawyers.'" Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)

5

(quoting Haines v. Kerner, 404 U.S. 519, 520, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972)).

IV.     Analysis

   A. Failure to Exhaust Administrative Remedies

All defendants contend that the record demonstrates that the Plaintiff was aware of his administrative remedies, but failed to exhaust them.  Plaintiff claims, however, in his March 8, 2006, submission that he made numerous attempts to receive administrative help, but was denied.  Defendants Brown and MacFarland submit the Affidavit of Carlos Villar, the Executive Assistant at South Woods State Prison, to support their claim that Plaintiff knew how to use the administrative remedies forms. Plaintiff, however, claims that he was told his issues could not be resolved by the prison administration.  At this juncture of the proceedings, Plaintiff has presented a material question of fact as to whether or not he was denied the ability to exhaust his administrative remedies, a prerequisite to the filing of the within claim.  Accordingly, summary judgment will be denied on this ground.

   B.  Defendants' Claim of No Personal Involvement

Defendants Brown and MacFarland also argue that they were not personally involved in the administration of actual medical care to Plaintiff and, therefore, the only viable theory

6

of liability, respondeat superior, is not actionable.

To state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48(1988); Pieknick v. Pennsylvania, 36 F.3d. 1250, 1255-56 (3d Cir. 1994).

In addition, local government units and supervisors generally are not liable under § 1983 solely on a theory of respondeat superior.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n. 8(1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Rode v. Dellarciprete, 845 F.3d 1195, 1207 (3d Cir. 1988) (citations omitted).  Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v.

7

Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

Further, a § 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 690 n.55. "[I]n an official-capacity action, . . . a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." Kentucky v. Graham, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

Construing Plaintiff's pleadings liberally, Mitchell, 318 F.3d at 529, Plaintiff claims that his requests for medical treatment were denied. Plaintiff makes many claims that the defendants knew or should have known of his requests, but did nothing. Plaintiff further requests that the Court allow him to proceed with discovery which will "clearly exhibit the defendants' persistent[] policy or custom of deliberate indifference." (Pl.'s Br. 2, 11)

Although Defendants Brown and MacFarland submit evidence that they had no personal involvement, there still remains the question of whether or not they were made aware of Plaintiff's alleged requests for medical treatment and did nothing. "Where prison authorities deny reasonable requests for

8

medical treatment. . . and such denial exposes the inmate to undue suffering or the threat of tangible residual injury, deliberate indifference is manifest" in violation of the Eighth Amendment.  Monmouth County Corr. Inst. Inmate v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987).  Thus, the Court believes a genuine issue of material fact exists as to the defendants' knowledge or involvement, if any.  The motion on this grounds will therefore be denied.  Of course, upon completion of discovery, the defendants will be entitled to renew their motion for summary judgment if Plaintiff cannot produce evidence of the Defendant's knowledge or involvement.

       C.    <u>Defendants' Claim of No Deliberate Indifference</u>

For the same reasons above, there remains a material question as to the defendants' knowledge or involvement.[3]  Accordingly, summary judgment on the grounds that defendants were not deliberately indifferent to Plaintiff's requests will be denied.

       D.    <u>Defendant CMS's Claim of No Negligence or Malpractice</u>

Defendant CMS believes that Plaintiff's "Complaint also contained state law medical malpractice claims."  (CMS' March 6,

---

[3] It is not disputed that Plaintiff did receive some medical attention.  The crux of Plaintiff's complaint is that the Defendants' denial of certain requests exposed Plaintiff to undue suffering and tangible residual injury.  See Monmouth Corr. Inst. Inmate, 834 F.2d 326, 346 (3d Cir. 1987).

9

2006, Statement of Undisputed Material Facts ¶ 1) CMS contends that any negligence or malpractice claims must be dismissed for Plaintiff's failure to file an Affidavit of Merit as required by N.J.S.A. 2A:53A-27.  That statute requires any action for personal injuries resulting from negligence or malpractice by a licensed professional be supplemented with the affidavit of a similarly licensed professional attesting that there is a reasonable probability that the level of care provided by the defendant fell outside acceptable standards.  Since Plaintiff has not filed such an affidavit, CMS contends that Plaintiff's negligence and malpractice claims must be dismissed.  Defendant CMS' motion is the first instance in this case that this Court is aware of that any negligence or malpractice claims have been considered.

     Plaintiff's Complaint does allege that CMS "failed to perform and execute . . . medical recommendations" and did not "afford any extra medical treatment."  (Pl.'s Compl. ¶ 6A) However, twice in the Complaint Plaintiff specifically asserts his claim is for "cruel and unusual punishment . . . ."  (Pl.'s Compl. ¶¶ 4B, 6A)  No where does the Complaint allege negligence or malpractice.  While <u>pro se</u> pleadings are liberally construed, <u>Mitchell</u>, 318 F.3d at 529, that flexibility desires only to get to the substance and intent of the <u>pro se</u> litigant's and not to ascribe to the plaintiff every claim possible, <u>Rivera v.</u>

10

Commonwealth of Pennsylvania, 2006 U.S. App. LEXIS 17416 at *2 n.1 (3d Cir. 2006). Here, Plaintiff competently alleged the facts and asserted the legal claims at the root of this action. Plaintiff's intent is clear. Since nothing suggests Plaintiff intended to assert a claim for negligence or malpractice against CMS this Court will not imply such a claim. Accordingly, Defendant CMS' motion to dismiss Plaintiff's negligence and malpractice claims will be denied.

V.   Conclusion

For the aforementioned reasons Defendants Brown and MacFarland's motion for summary judgment will be denied, and Defendant CMS' motion for summary judgment will be denied.

An accompanying Order shall issue this date.

                                    s/Renée Marie Bumb
                                    RENÉE MARIE BUMB
                                    United States District Judge

Dated: September 21, 2006